**FILED**

DEC 2 1 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------------------- x

TALAH AHMED MOHAMMED ALI ALMJRD,          :
    Detainee, Guantanamo Bay Naval Station
    Guantanamo Bay, Cuba;          :

                                          :

AHMED MOHAMMED ALI ALMJRD          :
    as Next Friend of
    Talal Ahmed Mohammed Ali Almjrd,          :

*Petitioners/Plaintiffs,*          :

v.          :

GEORGE W. BUSH,          **PETITION FOR ISSUANCE**
    President of the United States          **: OF A WRIT OF HABEAS**
    The White House          **CORPUS**
    1600 Pennsylvania Ave., N.W.
    Washington, D.C. 20500;          CASE NUMBER  1:05CV02444

                                          JUDGE: Rosemary M. Collyer

DONALD RUMSFELD,          DECK TYPE: Habeas Corpus/2255
    Secretary, United States
    Department of Defense          DATE STAMP: 12/21/2005
    1000 Defense Pentagon
    Washington, D.C. 20301-1000;          :

ARMY BRIG. GEN. JAY HOOD,          :
    Commander, Joint Task Force - GTMO
    JTF-GTMO          :
    APO AE 09360; and

                                            :

ARMY COL. MICHAEL BUMGARNER,          :
    Commander, Joint Detention
      Operations Group - JTF-GTMO,          :
    JTF-GTMO
    APO AE 09360,          :

*Respondents/Defendants.*          :

-------------------------------------------------------------- x

## PETITION FOR ISSUANCE OF A WRIT OF HABEAS CORPUS

This Petition for Issuance of a Writ of Habeas Corpus is respectfully submitted on behalf of Petitioner Talal Ahmed Mohammed Ali Almjrd ("Petitioner Almjrd"). A citizen of the Yemen, Petitioner Almjrd acts on his own behalf and through his fellow Petitioner and Next Friend Ahmed Mohammed Ali Almjrd, ("Next Friend Almjrd") who is the father of Petitioner Almjrd. Petitioner Almjrd is under detention at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"). Petitioner Almjrd is a civilian who wrongly has been classified an "enemy combatant" by the President of the United States, and is being held virtually *incommunicado* in military custody at Guantánamo, without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the Executive Order of November 13, 2001, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Michael Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for or have been charged with the responsibility of maintaining the custody and control of Petitioner Almjrd at Guantánamo.

Petitioner Almjrd is being held under color and authority of the Executive Branch, and in violation of the Constitution, laws and treaties of the United States as well as customary international law. Because he cannot act for himself, his father is acting as

1

Next Friend and has authorized counsel to file this Petition on his behalf. Accordingly, Next Friend Almjrd respectfully petitions this Court on behalf of Petitioner Almjrd to issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Almjrd or to establish in this Court a lawful basis for Petitioner Almjrd's initial and continued detention. Next Friend Almjrd also respectfully petitions this Court for an order of injunctive and declaratory relief on behalf of Petitioner Almjrd.

## I.
## JURISDICTION

1.    Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242. Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201, and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, Sixth, and Eighth Amendments to, the United States Constitution. Because they seek declaratory relief, Petitioners also rely on Fed. R. Civ. P. 57.

2.    This Court is empowered under 28 U.S.C. § 2241 to issue the requested Writ of Habeas Corpus, and to entertain the Petition filed by Next Friend Almjrd under 28 U.S.C. § 2242. This Court is further empowered to declare the rights and other legal relations of the parties herein pursuant to  28 U.S.C. § 2201, and to effectuate and enforce declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves an actual controversy within the Court's jurisdiction, and to issue all writs necessary or appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

2

## II.
## PARTIES

3.    Petitioner Almjrd is a Yemeni citizen who is presently incarcerated at Guantánamo and held in Respondents' unlawful custody and control. *See* Authorization of Ahmed Mohammed Ali Almjrd filed concurrently herewith and in support hereof, attached as Exhibit A.

4.    Next Friend Almjrd is the father of Petitioner Almjrd. *Id.* Because Petitioner Almjrd has been denied access to legal counsel and to the courts of the United States, Mr. Almjrd is acting as Petitioner Almjrd's Next Friend and, in that capacity, is authorized to file this petition on behalf of Petitioner Almjrd.

5.    Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States. Petitioner Almjrd is being detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war or, alternatively, pursuant to the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (Nov. 13, 2001) ("the Executive Order"). President Bush is responsible for Petitioner Almjrd's initial and continued unlawful detention and is sued in his official capacity.

6.    Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Almjrd. He is sued in his official capacity.

3

7.      Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force charged with operating the detention facilities at Guantánamo Bay. He has supervisory responsibility for Petitioner Almjrd and is sued in his official capacity.

8.      Respondent Army Col. Michael Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Almjrd is presently held. He is the immediate custodian responsible for Petitioner Almjrd's detention and is sued in his official capacity.

9.      Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

10.     Upon information and belief, Petitioner Almjrd is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the United States government in any civil or military proceeding.

11.     Upon information and belief, Petitioner Almjrd is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United

4

States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." *Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2639 (2004).

12.    Petitioner Almjrd seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for Respondents' classification of him as an "enemy combatant" as defined by the United States Supreme Court in *Hamdi* or an "enemy combatant" as that term is defined and used by the Executive Branch of the United States government in the Combatant Status Review Tribunals.

13.    Upon information and belief, at the time of his seizure and detention, Petitioner Almjrd was not a member of the Taliban Government's armed forces or Al Qaeda, nor did he cause or attempt to cause any harm to American personnel or property prior to his detention.

14.    Petitioner Almjrd remains incarcerated at the U.S. Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

15.    Petitioner Almjrd has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the U.S. Constitution, the laws and treaties of the United States, or customary international law.

16.    Upon information and belief, Petitioner Almjrd desires to pursue in the courts of the United States every available legal challenge to the lawfulness of his detention.

5

### The Authorization for Use of Military Force by Congress

17.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, the then ruling power in Afghanistan (the "Armed Conflict").

18.    On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons." Joint Resolution, Authorization for Use of Military Force, Public Law 107-40, 115 Stat. 224 (Sept. 18, 2001) (the "AUMF").

19.    Upon information and belief, Petitioner Almjrd did not participate in an armed conflict against the United States at any point in time; therefore, he is not properly detained pursuant to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or under the AUMF.

20.    Upon information and belief, Petitioner Almjrd is not, and has never been, a member of Al Qaeda or any other terrorist group.  Prior to his detention, he did not commit any violent act against any American person or property or espouse any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  He is not properly subject to the Executive Order issued by President Bush.

6

**The Executive Order**

21.    On November 13, 2001, Respondent Bush issued an Executive Order

authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has

"reason to believe":

> i.    is or was a member of the organization known as Al
> Qaeda;
> ii.    has engaged in, aided or abetted, or conspired to
> commit, acts of international terrorism, or acts in
> preparation therefor, that have caused, threaten to cause, or
> have as their aim to cause, injury to or adverse effects on
> the United States, its citizens, national security, foreign
> policy, or economy; or
> iii.    has knowingly harbored one or more individuals
> described in subparagraphs (i) and (ii).

*See* Executive Order, 66 Fed. Reg. 57,833, §2 (Nov. 13, 2001) (the "Executive Order").

President Bush must make the determination in writing contemplated by the Executive

Order.  The Executive Order was neither authorized nor directed by Congress, and is

beyond the scope of the AUMF.

22.    The Executive Order purports to vest President Bush with the sole

discretion to identify individuals who fall within its purview.  It establishes no standards

governing the exercise of his discretion.  Once a person has been detained, the Executive

Order contains no provision for that person to be notified of the charges he may face or of

the evidence, if any, upon which such charges purport to be based.  The Executive Order

authorizes detainees to be confined indefinitely without charges.  It contains no provision

for a detainee to be notified of his rights under domestic or international law and provides

neither the right to counsel, nor the rights to notice of consular protection or to consular

access at the detainee's request.  It provides no right to appear before a neutral tribunal to

7

review the legality of a detainee's continued detention and contains no provision for

recourse to an Article III court. In fact, the Executive Order expressly bars review by any

court. The Executive Order authorizes indefinite and unreviewable detention, based on

nothing more than Respondent Bush's written determination that an individual is subject

to its terms.

     23.    The Executive Order was promulgated in the United States and in this

judicial district; the decision to incarcerate Petitioner Almjrd was made by Respondents

in the United States and in this judicial district; the decision to detain Petitioner Almjrd at

Guantánamo was made in the United States and in this judicial district, and the decision

to continue detaining Petitioner Almjrd, was, and is, being made by Respondents in the

United States and in this judicial district.

     24.    Respondent Bush has never certified or determined in any manner, in

writing or otherwise, that Petitioner Almjrd is subject to the Executive Order.

     25.    Petitioner Almjrd is not properly subject to the Executive Order.

     26.    Upon information and belief, Petitioner Almjrd was not arrested or

detained by the United States in the course of his participation in an armed conflict

against the United States.

     27.    Petitioner Almjrd has not been, and is not being, detained lawfully either

pursuant to the Executive Order, Respondent Bush's authority as Commander-in-Chief

and/or under the laws and usages of war.

22095265v1

### Guantánamo Bay Naval Station

28.     On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to prison facilities at Guantánamo. Currently, prisoners are housed in a maximum-security interrogation and detention center at Guantánamo.

29.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their detention in the federal courts. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).

30.     Upon information and belief, by at least December 7, 2002, the United States military transferred Petitioner Almjrd to Guantánamo, where he has been held in the custody and control of Respondents ever since.

### The Conditions of Detention at Guantanamo

31.     Since gaining control of Petitioner Almjrd, the United States military has held him virtually *incommunicado*.

32.     Upon information and belief, and based on the experiences of other detainees, it is likely that Petitioner Almjrd has been, or will be, forced to provide involuntary statements to Respondents' agents at Guantánamo and interrogated repeatedly by agents of the United States Departments of Defense and Justice, and the Central Intelligence Agency, though he has not been charged with an offense and has not been notified of any pending or contemplated charges.

33.     Petitioner Almjrd has not appeared before a lawful military or civilian tribunal, and has not been provided access to counsel or the means to contact and secure counsel. He has not been adequately informed of his rights under the United States

9

Constitution, the regulations of the United States Military, the Geneva Convention, the

International Covenant on Civil and Political Rights, the American Declaration on the

Rights and Duties of Man, the 1951 Convention Relating to the Status of Refugees or

customary international law. Indeed, Respondents have taken the position that Petitioner

Almjrd should not be informed of these rights. As a result, Petitioner Almjrd lacks any

ability to protect or to vindicate his rights under domestic and international law.

34.     Upon information and belief, Petitioner Almjrd has been held under

conditions that violate his constitutional and international rights to dignity and freedom

from torture and from cruel, inhuman and degrading treatment or punishment. *See, e.g.,*

Press Release, United Nations, *United Nations Human Rights Experts Express Continued*

*Concern About Situation of Guantánamo Bay Detainees* (Feb. 4, 2005); Press Release,

International Committee of the Red Cross, *The ICRC's Work at Guantánamo Bay* (Nov.

30, 2004); Operational Update, International Committee of the Red Cross, *US Detention*

*Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC*

(Jul. 26, 2004); Amnesty International, *United States of America: Human Dignity*

*Denied: Torture and Accountability in the 'War on Terror'* (2004) (available at

http://web.amnesty.org/library/Index/ENGAMR 511452004); *see also* Barry C. Scheck,

*Abuse of Detainees at Guantanamo Bay,* The Nat'l Assoc. of Criminal Defense Lawyers

Champion, Nov. 2004, at 4-5.

35.     In a confidential report to the United States government, the International

Committee of the Red Cross ("the ICRC") charged the U.S. military with intentional use

of psychological and physical coercion on prisoners during interrogations at Guantánamo

that is "tantamount to torture." *See* Neil A. Lewis, "Red Cross Finds Detainee Abuse in

Guantánamo," N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors

and other medical workers at Guantánamo participated in planning for interrogations.

*Id.*; *see also* M. Gregg Bloche and Jonathan H. Marks, *When Doctors Go to War*, New

England Journal of Medicine, Jan. 6, 2005, at 3-4. Since details of the ICRC's report

emerged, new revelations of abuse and torture at Guantánamo have appeared, including

FBI memos detailing torture and "highly aggressive interrogation techniques" that

include 24-plus hour interrogations involving temperature extremes, dogs, prolonged

isolation, and loud music. *See* Amnesty International, *Guantánamo: An Icon of*

*Lawlessness,* 3-5 (Jan. 2005); *see also* Neil A. Lewis, *Fresh Details Emerge on Harsh*

*Methods at Guantánamo*, N.Y. Times, Jan. 1, 2005, at A11; Carol D. Leonnig, *Further*

*Detainee Abuse Alleged; Guantánamo Prison Cited in FBI Memos*, Wash. Post, Dec. 26,

2004, at A1; Neil A. Lewis and David Johnston, *New F.B.I. Files Describe Abuses of*

*Iraq Inmates*, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen and R. Jeffrey Smith, *FBI*

*Agents Allege Abuse of Detainees at Guantánamo Bay*, Wash. Post, Dec. 21, 2004, at A1;

Neil A. Lewis, *F.B.I. Memos Criticized Practices at Guantánamo*, N.Y. Times, Dec. 7,

2004, at A19. The Associated Press has reported allegations that female Guantánamo

interrogators have used sexual taunting, including smearing fake menstrual blood on a

detainee's face, to try to break Muslim detainees. *Gitmo Soldier Details Sexual Tactics*,

Associated Press, Jan. 27, 2005.

     36.    The unlawful and unconstitutional interrogation techniques used by

Respondents at Guantánamo include not only physical and psychological abuse but also

11

other impermissible conduct contrary to due process requirements, including, upon

information and belief, having agents of the Government present themselves as lawyers

for the detainees during meetings with the detainees, for the purpose of extracting

information from the detainees. *See* Sam Hanamel, *Lawyers Describe Guantánamo*

*Detainees as Emaciated, Abused*, Associated Press, Jan. 19, 2005.

      37.     Indeed, many of these violations – including isolation for up to thirty days,

twenty-eight hour interrogations, extreme and prolonged stress positions, sleep

deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create

anxiety and terror – were actually interrogation techniques approved for use at

Guantánamo by the most senior Department of Defense lawyer. *See* Action Memo from

William J. Haynes II, General Counsel, DOD, to Secretary of Defense (Nov. 27, 2002),

*available at* http://slate.msn.com/features/whatistorture/pdfs/020109.pdf; Department of

Defense, *Working Group Report on Detainee Interrogations in the Global War on*

*Terrorism: Assessment of Legal, Historical, Policy and Operational Considerations*, at

62-65 (Apr. 4, 2003), *available at*

http://www.defenselink.mil/news/Jun2004/d20040622doc8.pdf.[1]

---

[1] Additional details of the cruel and degrading conditions suffered by detainees at
Guantanamo are set out at length in a statement by numerous released British
detainees. *See* Shafiq Rasul, Asif Iqbal & Rhuhel Ahmad, *Composite Statement:*
*Detention in Afghanistan and Guantanamo Bay* 300, *at* http://www.ccr-
ny.org/v2/reports/docs/Gitmo compositestatementFINAL23july04.pdf). The
Department of Defense also informed the Associated Press that a number of
interrogators at Guantanamo have been demoted or reprimanded after investigations
into accusations of abuse at the facility. *See Report Details Guantanamo Abuses*,
Associated Press, Nov. 4, 2004.

38.    Respondents, acting individually or through their agents, have stated that whatever limitations apply on coercive interrogation techniques used by U.S. military officials under the auspices of the Department of Defense *do not apply* to interrogations conducted by agents of the CIA or other entities under President Bush. Eric Lichtblau, *Gonzales Says '02 Humane-Policy Order on Detainees Doesn't Bind CIA*, N.Y. Times, Jan. 19, 2005, at A17; Dan Eggen and Charles Babington, *Torture by U.S. Personnel Illegal, Gonzales Tells Senate*, Wash. Post, Jan. 18, 2005, at A4.

39.    Upon information and belief, Petitioner Almjrd is at risk of being subject to the above coercive and unlawful interrogation techniques, violating his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment.

40.    In published statements, Respondent Bush and Respondent Rumsfeld, and predecessors of Respondents Hood and Bumgarner, including Marine Brig. Gen. Mike Lehnert, have proclaimed that the United States may hold the detainees under their current conditions indefinitely. *See, e.g.,* Roland Watson, *British Team to Question Cuba Detainees*, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, *Detainee Camp Getting More Scrutiny*, Associated Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert

13

said plans are to build a more permanent prison 'exactly in accordance with federal

prison standards . . . .'"); John Mintz, *Extended Detention in Cuba Mulled*, Wash. Post,

Feb. 13, 2002 ("As the Bush Administration nears completion of new rules for

conducting military trials of foreign detainees, U.S. officials say they envision the naval

base at Guantanamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony

for many years to come.").

      41.    According to the Department of Defense, even detainees who are

adjudged innocent of all charges by a military commission may nevertheless be kept in

detention at Guantánamo indefinitely. *See* Press Background Briefing, Department of

Defense (Jul. 3, 2003), *at* http://www.defenselink.mil/transcripts/2003/tr20030703-

0323.html (last visited Feb. 14, 2005).

      42.    Counsel for Respondents have also consistently maintained that the United

States has reserved the right to hold the detainees under their current conditions

indefinitely. Transcript of Oral Argument on Motion to Dismiss at 22-24, *In re*

*Guantánamo Detainee Cases*, No. 02-CV-0299 (D.D.C. Dec. 1, 2004) (statements of

Principle Deputy Associate Attorney General Brian Boyle); *see also* Dana Priest, *Long-*

*Term Plan Sought for Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1. Moreover, the

Government has recently acknowledged plans to begin constructing another permanent

facility at Guantánamo. Christopher Cooper, *In Guantánamo, Prisoners Languish in a*

*Sea of Red Tape*, Wall St. J., Jan. 26, 2005, at A1; *Guantánamo Takes on the Look of*

*Permanency*, Associated Press, Jan. 9, 2005.

14

**Rendition**

43.     Upon information and belief, during interrogations, detainees have also

been threatened with rendition or transfer to countries that routinely practice torture. The

United States has secretly transferred detainees to such countries for detention in those

countries without complying with the applicable legal requirements for extradition.

44.     This practice, known as "rendition" or "extraordinary rendition," is used to

facilitate interrogation by subjecting detainees to torture while in detention in other

countries. *See* Jane Mayer, *Outsourcing Torture: The Secret History of American's*

*"Extraordinary Rendition" Program*, New Yorker, Feb. 14, 2005, at 106.

45.     The U.S. government's practice of rendition has been well documented by

various major American and international news organizations, including, among others,

the *Washington Post*, *The Los Angeles Times*, and the British Broadcasting Corporation

(the "BBC"). According to news accounts,

> Since September 11, the U.S. government has secretly
> transported dozens of people suspected of links to terrorists
> to countries other than the United States, bypassing
> extradition procedures and legal formalities, according to
> Western diplomats and intelligence sources. The suspects
> have been taken to countries . . . whose intelligence
> services have close ties to the CIA and where they can be
> subjected to interrogation tactics -- including torture and
> threats to families -- that are illegal in the United States, the
> sources said. In some cases, U.S. intelligence agents remain
> closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *"U.S. Behind Secret Transfer of Terror Suspects,"*

Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest, *"Long Term Plan Sought for*

*Terror Suspects,"* Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,'

15

depend on arrangements between the United States and other countries, such as Egypt ...,

that agree to have local security services hold certain suspects in their facilities for

interrogation by CIA and foreign liaison officers.").

46.     Upon information and belief, Petitioner Almjrd is at risk of being

rendered, expelled or returned without lawful procedures to a country that engages in

torture during interrogations and incarceration.

47.     Upon information and belief, Petitioner Almjrd has a legitimate fear of

imminent harm if rendered to any other country, including his home country of Yemen,

due to the heightened risk of incarceration, torture, and persecution.

48.     The rendering of Petitioner Almjrd to Yemen or to another country for

interrogation and torture would violate the Convention Against Torture and other Cruel

and Degrading Treatment and Punishment, the international Covenant on Civil and

Political Rights, and the Third and Fourth Geneva Conventions.  This Court has

jurisdiction to address the potential rendition of Petitioner Almjrd pursuant to 28 U.S.C.

§§2241(c)(1) and 1350.

## IV.
## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL DEPRIVATION OF LIBERTY)

49.     Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

16

50.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate common law principles of due process as well the Due Process Clause of the Fifth Amendment to the Constitution of the United States. Respondent Bush has ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of law, and the remaining Respondents have implemented those orders. Respondents' actions deny Petitioner Almjrd the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the United States Constitution, the Uniform Code of Military Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions, and customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

51.     To the extent that Petitioner Almjrd's detention purports to be authorized by the Executive Order (despite the fact that the Order has not been authorized by Congress), the Executive Order violates the Fifth Amendment on its face and as applied to Petitioner.

52.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SECOND CLAIM FOR RELIEF
(DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION
OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

53.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

17

22095265v1

54.     By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Almjrd to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

55.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory and injunctive relief, as well as any other relief the Court may deem appropriate.

THIRD CLAIM FOR RELIEF
(GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

56.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.     By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Almjrd the process accorded to persons seized and detained by the United States military in times of armed conflict as established by the Third and Fourth Geneva Conventions.

58.     Violations of the Geneva Conventions are direct treaty violations, are violations of customary international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

59.     Respondents are liable for the conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

60.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

18

22095265v1

FOURTH CLAIM FOR RELIEF
(INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW -
ARBITRARY DENIAL OF DUE PROCESS)

61.     Petitioners incorporate by reference all preceding paragraphs as if set forth
fully herein.

62.     By the actions described above, Respondents have denied and continue to
deny Petitioner Almjrd the due process accorded to persons seized and detained by the
United States military in times of armed conflict as establish by customary international
humanitarian and human rights law as reflected, expressed, and defined in multilateral
treaties and other international instruments and domestic judicial decisions, and other
authorities.

63.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and
injunctive relief, as well as any other relief the Court may deem appropriate.

FIFTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - TORTURE)

64.     Petitioners incorporate by reference all preceding paragraphs as if set forth
fully herein.

65.     By the actions described above, the Respondents, upon information and
belief, directed, ordered, confirmed, ratified, and/or conspired to bring about acts that
deliberately and intentionally inflicted severe physical and psychological abuse and
agony upon Petitioner Almjrd in order to obtain coerced information or confessions from
him, punish or intimidate Petitioner Almjrd or for other purposes.

66.     Upon information and belief, abuses included holding Petitioner Almjrd in
conditions of isolation; making him constantly vulnerable to repeated interrogation and

19

severe beatings; keeping him in cages with no privacy; shackling him with heavy chains and irons; placing him in solitary confinement for minor rule infractions for prolonged periods of time; interrogating him while shackled and chained in painful positions; exposing him to extreme temperatures; subjecting him to violence or to the threat of violence; threatening him with rendition to countries that practice torture; sexually humiliating him; denying him access to counsel and family; depriving him of adequate medical care; and subjecting him to repeated psychological abuse.

67.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

68.    Respondents are liable for such conduct to the extent they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit such acts of torture against Petitioner Almjrd.

69.    Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SIXTH CLAIM FOR RELIEF<br>(ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

70.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

71.    Upon information and belief, the acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Almjrd, forcing him to act

20

against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

72.     The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated customary international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

73.     Respondents are liable for such conduct to the extent that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Almjrd.

74.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

SEVENTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE –
ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

75.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

76.     The acts described herein constitute arbitrary arrest and detention of Petitioner Almjrd in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other

21

international instruments, international and domestic judicial decisions, and other authorities.

77.     Respondents are liable for such conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Almjrd in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

65.     As a result of Respondents' unlawful conduct, Petitioner Almjrd has been and continues to be deprived of his freedom, separated from his family, and upon information and belief, forced to suffer severe physical and mental abuse.

66.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

78.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

79.     By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Almjrd in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that such acts violated customary international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other

22

international instruments, international and domestic judicial decisions, and other

authorities.

80.    As a result of Respondents' unlawful conduct, Petitioner Almjrd has been

and continues to be deprived of his freedom, separated from his family and, upon

information and belief, forced to suffer severe physical and mental abuse.

81.    Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the Court may deem appropriate.

NINTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

82.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

83.    Upon information and belief, Petitioner Almjrd is not, nor has he ever

been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind.

67.    The Executive Branch lacks the authority to order or direct military

officials to detain civilians who are seized far from the theater of war or occupied

territory or who were not "carrying a weapon against American troops on a foreign

battlefield." *Hamdi*, 124 S. Ct. 2633 at 2642.

68.    By the actions described above, Respondent Bush has exceeded and

continues to exceed his authority under Article II of the United States Constitution by

authorizing, ordering and directing that military officials seize Petitioner Almjrd and

transfer him to military detention, and by authorizing and ordering his continued military

detention at Guantánamo. All of the Respondents acted and continue to act without

23

lawful authority by directing, ordering, and/or supervising the seizure and military

detention of Petitioner Almjrd.

69.    The military seizure and detention of Petitioner Almjrd by the

Respondents is *ultra vires* and illegal because it violates Article II of the United States

Constitution.  To the extent that Respondents assert that Petitioner's detention is

authorized by the Executive Order, that Order exceeds Respondent Bush's authority

under Article II and is *ultra vires* and void on its face and as applied to Petitioner Almjrd.

70.    To the extent that Respondents assert that their authority to detain

Petitioner Almjrd derives from a source other than the Executive Order, including

without limitation Respondent Bush's inherent authority to conduct foreign affairs or to

serve as Commander-in-Chief of the U.S. Armed Forces, whether from Article II of the

Constitution or otherwise, Respondents lack such authority as a matter of fact and law.

71.    Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and

injunctive relief, as well as any other relief the Court may deem appropriate.

### TENTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADIMINSTRATIVE PROCEDURES ACT --
### ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

84.    Petitioners incorporate by reference all preceding paragraphs as if set forth

fully herein.

85.    Army Regulation 190-8 prohibits the detention of civilians who were

seized away from the field of battle or outside occupied territory or who were not

engaged in combat against the United States.  *See, e.g.*, Army Reg. 190-8 at 1-6(g)

("Persons who have been determined by a competent tribunal not to be entitled to

prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

86.     By arbitrarily and capriciously detaining Petitioner Almjrd in military custody for over three years in the manner described above, Respondents have acted and continue to act *ultra vires* and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

87.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

ELEVENTH CLAIM FOR RELIEF
(VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT --
ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS )

88.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

89.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Almjrd the process accorded to persons seized and detained by the United States military in times of armed conflict as established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

90.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief as well as any other relief the Court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
### (VIOLATION OF THE ADMINSTRATIVE PROCEDURES ACT --
TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

91.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

92.     By the actions described above, the Respondents, upon information or belief, have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Almjrd to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

93.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## THIRTEENTH CLAIM FOR RELIEF
### (VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

94.     Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

95.     Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Almjrd's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Almjrd's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the U.S. Constitution.

96.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

26

## FOURTEENTH CLAIM FOR RELIEF
## (DUE PROCESS CLAUSE - RENDITION)

97.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

98.     Upon information and belief, Petitioner Almjrd is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of his rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

99.     Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## FIFTEENTH CLAIM FOR RELIEF
## (CONVENTION AGAINST TORTURE AND
## CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

100.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

101.     Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 1465 U.N.T.S. 85 (1984), and the 1951 Convention and 1967 Protocol Relating to the Status of Refugees, 19 U.S.T. 6259.

102.    Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## SIXTEENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE- RENDITION)

103.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

104.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under customary international law, which may be vindicated under the Alien Tort Statute.

105.    Accordingly, Petitioner Almjrd is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the Court may deem appropriate.

## V.
## PRAYER FOR RELIEF

WHEREFORE, Petitioners respectfully request that the Court grant the following relief:

1.    Designating Ahmed Mohammed Ali Almjrd as Next Friend of Talal Ahmed Mohammed Ali Almjrd;

2.    Issuing the Writ of Habeas Corpus and ordering Respondents to release Petitioner Almjrd from his current unlawful detention;

22095265v1

3.    Ordering that Petitioner Almjrd be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.    Ordering that Petitioner Almjrd cannot be transferred to any other country without his specific written agreement or the written agreement of his counsel while this action is pending;

5.    Ordering that Petitioner Almjrd cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that he will be subject to torture;

6.    Ordering Respondents to allow counsel to meet and confer with Petitioner Almjrd, in private and unmonitored attorney-client conversations;

7.    Ordering Respondents to cease all interrogations of Petitioner Almjrd while this litigation is pending;

8.    Ordering Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Almjrd;

9.    Ordering and declaring the Executive Order of November 13, 2001 is *ultra vires* and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and/or customary international law;

10.    Ordering and declaring that the prolonged, indefinite, and restrictive detention of Petitioner Almjrd without due process is arbitrary and

29

unlawful and a deprivation of liberty without due process in violation of common law principles of due process, the Due Process Clause of the Fifth Amendment to the United States Constitution, the regulations of the United States military, the treaties of the United States, and/or customary international humanitarian law; and

11.    Granting such other and further relief as the Court may deem just or appropriate to protect Petitioner's rights under the common law, the United States Constitution, federal statutory law, and/or international law.

30

Dated:        December 21, 2005            Respectfully submitted,

Counsel for Petitioners:

Jennifer C. Argabright (Bar. No. 480763)
John B. Missing (Bar No. 425469)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118

Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Philip Rohlik
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6386

*Of Counsel*
Barbara Olshansky
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

22095265v1

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioners certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioners without compensation.

Dated:        December 21, 2005

Jennifer C. Argabright (Bar. No. 480763)
John B. Missing (Bar No. 425469)
DEBEVOISE & PLIMPTON LLP
555 13th Street, N.W. Ste 1100E
Washington, D.C. 20004-1169
Tel:  (202) 383 8000
Fax:  (202) 383 8118

Jeffrey I. Lang
Jennifer R. Cowan
Ellen A. Hochberg
Tatia L. Miller
Philip Rohlik
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6386


*Of Counsel*
Barbara Olshansky
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

22095265v1

# **EXHIBIT A**

# Petition for Issuance of Writ of

# *Habeas Corpus*

*al-Mah  al-Mjrez*

### Authorization

Date: _____

*Ali   Almjred*

My name is <u>Ahmed Mohammed</u>. I am acting as next friend for my <u>Son</u>, whose name is <u>Talal Ahmed Mohammed Ali Almjred</u> a citizen of <u>Yemen</u>, who is being held in Guantánamo Bay.

I know that he would want me to act on his behalf to secure legal representation for him. I hereby authorize Michael Ratner and Barbara Olshansky of the *Center for Constitutional Rights* and any person assigned by these lawyers to act on my behalf and on my relative's behalf, to secure any documents and information concerning my relative that are necessary for his defense, and to seek whatever redress they believe to be in his best interests, in the Courts of the United States and in any other legal forum available.

Signature: _____

Print Name: <u>Ahmed Mohammed Ali Almjred.</u>

Witnessed by: _____

Print Name: <u>Nasser Arraybye</u>

تفويض

التاريخ: ٢٠٠٥/١٢/٢١ـ٢٤

اسمي ١ حميد محمد علي محمد . وأنا أتصرف بصفة الصديق الأقرب لـ ١ بن
الذي يدعى طيبان ١ حمد محمد علي محمد ، وهو مواطن من ١١من
ومحتجز في خليج جوانتانامو.

إنني أعلم أنه يريدني أن أتصرف بالنيابة عنه لتأمين التمثيل القانوني له. وأنا أفوض بموجب هذه الوثيقة
الأستاذ مايكل راتنر والأستاذة باربرا أولشانسكي من "مركز الحقوق الدستورية" وأي شخص يعينه هذان
المحاميان، بالتصرف بالنيابة عني وعن قريبي لتأمين الحصول على أي مستندات ومعلومات متعلقة بقريبي
واللازمة للدفاع عنه، وبالمطالبة بأي تعويض يعتقدون أنه من أفضل مصلحته في محاكم الولايات المتحدة
وفي أي محكمة قانونية أخرى متوفرة.

التوقيع:

كتابة الاسم: ١ حميد محمد علي محمد

توقيع الشاهد:

كتابة الاسم: ١ محمد شتا (بس)